MARY BURKE, JAMES BARRY and MICHAEL BARRY, Plaintiffs, *v.* NEW YORK UNIVERSITY, Defendant.

(Supreme Court, New York Special Term, January, 1920.)

Public Health Law, § 316 — construction of — statutes — delivery of corpse to medical institutions.
Pleading — allegations in complaint — when demurrer sustained.

While section 316 of the Public Health Law (Laws of 1909, chap. 49, as amended) not only permits but in certain cases requires morgues and other institutions and persons named, to deliver any corpse in their possession not placed there by relatives or friends for keeping or burial, to medical institutions, the words of the statute which prohibits the delivery or receipt of the corpse of any person " known to have relatives or friends without the assent of such relatives or friends " necessarily mean, known to the institution charged with wrongfully receiving a corpse or, what is tantamount to knowledge, lack of reasonable inquiry.

Where though the complaint in an action brought for injury to plaintiffs' feelings due to the act of defendant, through its medical department, in dissecting the body of their father who died in a public hospital from which defendant received the corpse, alleged that plaintiffs " had left their address in order that they might learn if anything had happened to their father, or of his death " it did not state with whom the address was left or when it was left. Upon sustaining a demurrer with

leave to serve an amended complaint, *held,* that though it could be inferred that the address was left with the hospital it could not be inferred that it was left with defendant or brought to its attention, and that there was no plausible ground for argument that knowledge on defendant's part was alleged.

DEMURRER to the complaint for insufficiency.

Francis W. Aymar, for demurrer.

Mann Trice (Joseph T. Cashman and Mann Trice, of counsel), opposed.

GIEGERICH, J. The sufficiency of the complaint is challenged by demurrer. The plaintiffs, alleging that they are the only next of kin, to wit, the daughter and the sons of one John Barry, bring this action for injury to their feelings due to the act of the defendant, through its medical department, in dissecting the body of their deceased parent. The complaint alleges that on the 19th day of December, 1917, their father died at the Central Neurological Hospital on Blackwell's Island, and that on or about the same day his body was brought to Manhattan and deposited in the morgue, and that on December twenty-ninth a death certificate was filed in the health department and a burial permit issued for burial at the city cemetery. It is further alleged that the body was not interred in the city cemetery, but " was wrongfully and illegally taken by the defendant, through its agents, and held by them until February 19, 1918, on which date his body was dissected by the officers and agents of the defendant, and the bones and remains thereof were cremated.'' The complaint further states that the plaintiffs never gave their consent to the dissection of the body of their father, and that before his death he did not give any permission or consent to such dissection. It is further

alleged " that the plaintiffs were on intimate terms with their father, and had left their address in order that they might learn if anything had happened to their father or of his death." Section 316 of the Public Health Law, being chapter 49 of the Laws of 1909, as amended by chapter 335 of the Laws of 1913, reads in part as follows: " Sec. 316. *Cadavers.*— The persons having lawful control and management of any hospital, prison, asylum, morgue or other receptacle for corpses not interred, and every undertaker or other person having in his lawful possession any such corpse for keeping or burial may deliver and he is required to deliver, under the conditions specified in this section, every such corpse in their or his possession, charge, custody or control, not placed therein by relatives or friends in the usual manner for keeping or burial, to the medical colleges and universities of the state authorized by law to confer the degree of doctor of medicine and to all other colleges or schools incorporated under the laws of the state for the purpose of teaching medicine, anatomy or surgery to those on whom the degree of doctor of medicine has been conferred, and to any university of the state having a medical preparatory or medical post-graduate course of instruction. No corpse shall be so delivered or received if desired for interment by relatives or friends within forty-eight hours after death, or if known to have relatives or friends, without the assent of such relatives or friends; or of a person who shall have expressed a desire in his last illness that his body be interred, but the same shall be buried in the usual manner." It will be observed that the statute not only permits, but in certain cases requires, morgues and the other institutions and persons named to deliver any corpse in their possession not placed there by relatives or friends for keeping or burial to medical institutions

like the defendant. The statute prohibits such delivery or receipt, however, of the corpse of any person " known to have relatives or friends, without the assent of such relatives or friends." I think this demurrer can be decided upon the question whether or not the complaint sufficiently alleges that the corpse in this case was of a person " known to have relatives or friends." I take it that these words necessarily mean known to the institution charged with wrongful receiving of a corpse or, what is tantamount to knowledge, lack of reasonable inquiry. *Newman* v. *Stewart,* 71 Misc. Rep. 1. I cannot see in the complaint before me any allegations which can fairly be construed as charging such knowledge or such lack of inquiry to the defendant. It is true the complaint does allege that the plaintiffs " had left their address in order that they might learn if anything had happened to their father, or of his death," but it is not stated with whom they left their address or when they left it. If anything can be inferred on this point, it is that the address was left with the hospital where their father was. Certainly it cannot be inferred that it was left with the defendant, or that it was brought to the defendant's attention. I am consequently of the opinion that there is no plausible ground for arguing that the complaint alleges knowledge on the defendant's part. Whether there is any sufficient ground for holding that the facts alleged show lack of proper inquiry is not so plain. Since the plaintiff's address was left with the hospital, there was a clew which the defendant might have followed up, and by which it might have obtained knowledge of the plaintiffs and their relationship. The question is whether the defendant ought to have done that. In this connection it should be observed that the section of the statute above quoted contains this further provision, viz.: "Any such medi-

cal college, school or university desiring to avail itself of the provisions of this section shall notify such persons having the control and management of the institutions and places heretofore specified, and such undertakers and other persons having any such corpse in their possession, custody or control   *   *   *   shall notify the proper officers of such college, school or university whenever there is any corpse in their possession, custody or control, which may be delivered to a medical college, school or university under this section and shall deliver the same to such college, school or university.'' This seems to place upon the persons having control of the institutions mentioned and having possession of such corpses the duty of ascertaining whether any particular corpse is one '' which may be delivered   *   *   *   under this section.'' The persons so in control in this case were those who had charge of the morgue, and the statute would appear to have placed upon them the duty of making inquiry to ascertain whether the particular corpse was that of a person '' known to have relatives or friends.'' Since it was their duty to make such inquiry, it is not apparent that any useful purpose would be accomplished by requiring the defendant to make the same inquiry over again, and, in the absence of plain language to that effect, the statute should not be held to have intended such duplication of inquiry. The demurrer should, therefore, be sustained, with costs, but with leave to the plaintiffs to serve an amended complaint within twenty days after service of a copy of the decision to be entered hereon, with notice of entry thereof, and upon payment of such costs.

Ordered accordingly.